# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**YAROSLAV LOZOVYY**

**CIVIL ACTION**

**v**

**NO. 13-424-JWD-SCR**

**RICHARD L. KURTZ, ET AL.**

## RULINGS ON SPECIAL MOTIONS TO STRIKE
## AND MOTION TO STRIKE EVIDENCE

This matter comes before the Court on the Special Motion to Strike (R.Doc. 22), the

Amended Special Motion to Strike And, Alternatively, Rule 56 Motion for Summary Judgment

(R.Doc. 25), and the Motion to Strike Evidence (R.Doc. 32), all filed by Defendants Richard L.

Kurtz and Thomas R. Klei (collectively, "Defendants").  Oral argument was heard on January

15, 2015.

Having carefully considered the law, evidence, and arguments of the parties, the Court

denies Defendants' Motion to Strike Evidence (R.Doc. 32) and grants Defendants' Special

Motion to Strike (R.Doc. 22) and Amended Special Motion to Strike And, Alternatively, Rule 56

Motion for Summary Judgment (R.Doc. 25),

## I.     Factual and Procedural Background

This is a defamation action.  Plaintiff Yaroslav Lozovyy was employed by Louisiana

State University at the J. Bennett Johnston Sr. Center for Advanced Microstructures & Devices

("CAMD") on an annual-renewable contract basis as a Research Assistant 5, with his salary paid

by CAMD to support beamline activities in the facility. (R.Doc. 22-7, p. 1-2).

LSU is presently, and was at the time of Lozovyy's employment, designated as an

Energy Frontier Research Center ("EFRC") by the U.S. Department of Energy. (R.Doc. 22-1, p. 1). LSU's EFRC work relies heavily on experimental research conducted at CAMD. (Id). As an EFRC, LSU is annually awarded federal research funding through a five-year renewable grant from the U.S. Department of Energy. (Id., p.2). LSU participants and CAMD users have also received federal funding through EFRC Innovation Grants, which are "sub-grants" of EFRC for specific projects within the scope of EFRC. (Id.).

The focus of CAMD's EFRC research is developing an atomic level catalyst design, the practical application of which would include, for example, transforming carbon dioxide into liquid fuel, thereby producing an alternative energy source. (Id.). Defendant claims that the project, if successful, would have a significant impact on the United States economy, as well as the global economy. (Id.).

CAMD's EFRC partners include Clemson University, University of Florida, Georgia Institute of Technology, Grambling University, Oak Ridge National Laboratory, Pennsylvania State University, Texas A&M University, Vienna University of Technology - Institute of Applied Physics, University of Utrecht, and The Ohio State University. (Id.).

In April 2012, a decision was made to not renew Lozovyy's contract, which expired on June 30, 2012. (Id., p. 5). Lozovyy continued to be paid by CAMD through July 30, 2012. (Id) Nataliya Lozova, Lozovyy's wife, was also employed at CAMD, but her contract was not renewed when it expired on January 31, 2013. (Id., p. 6).

After Lozovyy departed from CAMD, Peter Dowben of the University of Nebraska-Lincoln contacted Richard Kurtz, defendant and Interim Director of CAMD. (Id., p. 7). Dowben had a long-term relationship with Lozovyy, and CAMD hired Lozovyy initially on the

recommendation and request of Dowben, for whom Lozovyy had done his post doctorate work. (Id., at 3). When Dowben contacted Kurtz, Dowben demanded an explanation as to the reason or reasons why Lozovyy's contract had not been renewed. (Id., p. 7). Dowben further demanded that Lozovyy be allowed to return and have access to CAMD as a UNL employee. Dowben requested a conference call to discuss, among other things, Dowben's demands related to Lozovyy. (Id.).

The conference call was held on July 13, 2012. (Id.) There were seven participants. Defendants Richard Kurtz and Thomas R. Klei, Vice Chancellor of Research and Economic Development of LSU, participated. (R.Docs. 22-1, p. 7 and 22-2, p. 1). Additionally, there was Kalliat Valsaraj, Vice Chancellor of Research and Economic Development at LSU, and John Scott, Scientific Director for CAMD. (R.Docs. 22-3, p. 1 and 22-4, p. 1). Finally, from the University of Nebraska - Lincoln, there was Prem Paul, Greg Snow, and Peter Dowben. (R.Doc. 22-1, p. 7).

The central factual issue in this suit is whether, during the telephone call, the Defendants Kurtz and Klei defamed Lozovyy by stating that he destroyed and/or stole data. Defendants claim that, at no time in the conference call did Kurtz, Klei, or any other representative of LSU say or suggest that Lozovyy had destroyed and/or stolen any data. (R.Docs. 22-1, p. 6-8; 22-2, p. 1-2; 22-3, p. 1-2; 22-4, p. 1-2). Four witnesses essentially attest to this fact - Kurtz, Klei, Valsaraj, and Scott. (Id.).

Plaintiff submits the affidavit of Peter Dowben, who also participated on the call. Dowben "states that the defendants, Kurtz and Klei, affirmatively stated that Dr. Lozovyy had stolen or destroyed data of users of CAMD." (R.Doc. 29-1, p. 2; 29-2, p.1). This is the only

witness that Plaintiff has offered to the Court who allegedly heard the defamatory remarks directly from the Defendants.

There are no affidavits or declarations of two witnesses - Prem Paul and Greg Snow - both of University Nebraska - Lincoln - the final two participants on the conference call.

With their reply memorandum (R.Doc. 31), Defendants submitted considerable evidence attempting to attack the credibility of Peter Dowben and highlight the close relationship between him and the Plaintiff. These documents generally support the conclusion that Dowben wrote to LSU on Lozovyy's behalf several times, that the two collaborated together on many papers, that the two discussed Lozovyy's strategy toward dealing with people on the projects. They would also complain to one another about people on the project, including the Defendants. Dowben personally loaned money to Lozovyy. Finally, in a June 28, 2012, email, Plaintiff stated that Plaintiff had heard a rumor about his stealing data, which would have occurred a few weeks before the allegedly defamatory statements were even made.

The parties also dispute the extent to which and whether Plaintiff was injured by the alleged defamatory remarks.[1] However, as the Court explained at oral argument, Plaintiff's declaration attesting to the fact that he suffered humiliation and emotional distress is enough, by

---

[1]Defendants assert that Lozovyy gained employment at the University of North Texas-Denton within six months after his departure from CAMD. (R.Docs. 22-5 and 22-6). Plaintiff disputes this in that Lozovyy did not obtain full employment at this university and was in fact forced to take a part-time job at one-half pay. (R.Docs. 29-1 and 29-3). Further, Lozovyy is presently employed by the University of Indiana-Bloomington, which employment began within one year after his departure from CAMD. (R.Docs. 22-5 and 22-6). Plaintiff counters that he has suffered "emotional distress, mental anguish, embarrassment, and humiliation" as a result of the defamatory remarks. (R.Doc. 29-3). Further, other professionals submit affidavits stating that they have stopped collaborating with Lozovyy because of the damage to his reputation. (R.Docs. 29-4 and 29-5).

itself, to satisfy the injury requirement, regardless of the burden imposed on this motion.

Plaintiff filed his Complaint on July 1, 2013. On July 18, 2014, Defendants filed their Special Motion to Strike (R.Doc. 22) seeking dismissal of the action under Article 971 of the Louisiana Code of Civil Procedure.

On July 24, 2014, the Court issued a Notice to Parties (R.Doc. 23) stating that the Special Motion to Strike was converted to a motion for summary judgment and that the Defendants were given 14 days to supplement their motion to dismiss as appropriate for one for summary judgment. Defendants did so on August 7, 2015, when they filed an Amended Special Motion to Strike and, Alternatively, Rule 56 Motion for Summary Judgment. (R.Doc. 25). On September 11, 2014, Defendants filed their Motion to Strike Evidence and Request for Oral Argument. (R.Doc. 32).

On December 16, 2014, the Court issued a notice to counsel (R.Doc. 49) stating that, because the Defendants introduced new evidence when they filed their Reply Brief (R.Doc. 31), Plaintiff had seven (7) days to respond and introduce new evidence.

The next day, the Court issued another notice to counsel (R.Doc. 50) explaining that it reconsidered its previous notice to counsel (R.Doc. 23) and decided that Defendants' Motion to Strike and Amended Motion to Strike (R.Docs. 22 and 25) shall be treated as special motions to strike under Article 971. The parties addressed the significance of this change in their additional briefing. (See R.Docs. 51 and 52).

## II.    Discussion

### A.  Motion to Strike Evidence

The Plaintiff submitted four declarations in opposition to Defendants' special motion to

strike.  Defendants have objected to three of those declarations - that of Evgueni E. Nesterov, that of Carl A. Ventrice, and that of Peter Dowben.  Defendants basically object to every statement in these affidavit, for one reason or another.

In sum, Defendant's motion is denied *in toto*.  The Plaintiff's declarations are not perfect, but they are not so defective as to exclude them.  The Court will address each declaration, and each objected-to statement, in turn.

### 1. Nesterov's Declaration

**a.** ***"I had heard allegations that Dr. Lozovyy had stolen and destroyed data of CAMD users."***  Defendant objects that this is hearsay.  The Court finds that this statement is not hearsay because it is not offered for the truth of the matter asserted.

**b.** ***"Such allegations harmed Dr. Lozovyy's reputation..."*** Defendants object that this statement is unsubstantiated, conclusory, and not relevant.  Plaintiff responds that the statement is not unsubstantiated or conclusory because the statement speaks for itself; it is clear from the alleged defamatory remarks why it is damaging.  As to the fact that Nesterov did not participate in the conference call, Plaintiff explains, "While the general rule is that the original author of a libelous publication is not to be held liable for the voluntary republication of it by others, an exception exists where the republication is the natural and probable consequence of the defendant's act.  *Wiggins v. Creary* 475 So.2d 780 (La.App. 1 Cir. 1985)." (R.Doc. 36, p. 5). Plaintiff claims that it is easily presumed that, after the conference call, there were other discussions about defendants' allegations among LSU and UNL participants, "and synchtrotron scientists all over the country and even overseas, as a natural and probable consequence of the defendants' actions." (Id., p. 5-6).

The Court agrees with Plaintiff. These statements are defamatory per se, so it is clear how they harm Plaintiff's reputation. While the Court agrees that it is at least arguable that the declaration fails to establish that Nesterov can link the defamatory words back to the conference call, the Court will construe the declaration as a whole and, in doing so, it is clear that that was the intention of Nesterov. Defendants' objection is overruled.

c. **"*Dr. John Scott, the Scientific Director of CAMD, submitted a lukewarm recommendation letter for Dr. Lozovyy which mentioned mistakes made by Dr. Lozovyy at CAMD.*"** Defendant objects that this is irrelevant hearsay. The Court disagrees; Plaintiff is offering the statement to prove the fact that the letter was written, not the truth of its contents. Concerning relevance, Plaintiff was offering this to show that the "mistakes made" were the destruction/theft of data. Thus, Plaintiff is attempting to show damage to reputation. Again, while there is arguably a gap in the testimony, a fair reading of the declaration as a whole shows what Plaintiff intended to prove.

d. **"*Based on this letter and the awareness of persons on the search committee of internal political struggles at CAMD, the committee's enthusiasm toward further consideration of Dr. Lozovyy's application was reduced in favor of other applications.*"** Defendants object that this is irrelevant and conclusory. The Court disagrees. Nesterov was on the search committee and would thus have personal knowledge of these facts. Further, this is relevant to the issue of damages.

### 2. Ventrice's Declaration

a. **"*I had heard allegations that Dr. Lozovyy had stolen and destroyed data of CAMD users.*"** Defendants object that this is hearsay and not based on personal knowledge. For the

same reasons explained above, the Court finds that this is not hearsay because it was not offered for the truth of the matter asserted.

**b.** **"*Such allegations harmed Dr. Lozovyy's reputation.*"** Defendants object that this is unsubstantiated, conclusory, and irrelevant. The Court disagrees. The words are defamatory per se, so they are not unsubstantiated and conclusory. Further, they are not irrelevant because, while the statements could have been made by third parties, a fair reading of the declaration shows that Plaintiff intended to link the damages to Defendants' alleged actions.

### 3. Dowben's Declaration

**a.** "***Prof. Greg Snow asked why he [Lozovyy] had been fired from CAMD.***" Defendants object that this is hearsay. The Court disagrees; the statement is not offered to prove the truth of the matter asserted.

**b.** "***Kurtz and Klei stated that Lozovyy had been fired and would not be allowed back onto the CAMD floor.***" **and** "***In response to questions about whether financial or budget problems had led to Dr. Lozovyy's contract not being renewed, Kurtz and Klei stated unequivocally that Dr. Lozovyy's firing was not the result of financial or budge issues, and that Dr. Lozovyy was a former employee who was not welcome and would not be allowed back onto the synchrotron floor even if he were a Nebraska employee.***" Defendants object on the grounds that there is no claim that the firing was defamatory. While this is arguably a closer call, the Defendants' objection is overruled. These statements reinforce the fact that Defendants made defamatory statements about the theft or destruction of data because the above statements flow naturally from the allegedly defamatory words.

**c.** "***The allegations by Kurtz and Klei were shocking***" - Defendants object that this is

irrelevant.  Objection overruled.  This statement is relevant to damages because Dowben claims

to disassociate himself from the Plaintiff because of the allegedly defamatory words, thereby

causing Plaintiff damages.

     **d.**   **Dowben "*had to disassociate [himself] from working with Dr. Lozovyy within the**

***small scientific community of which they are a part.*"** Defendants object that this is

unsubstantiated, conclusory, and irrelevant.  Objection overruled.  When read as a whole,

Dowben's declaration clearly expresses that he disassociated himself because of the allegedly

defamatory remarks.

     **e. Kurtz and Klei "*specifically stated that Dr. Lozovyy had stolen and destroyed data***

***or users.*"**  Defendants claim this is not competent or reliable evidence and thus should not be

admitted.  Defendants further assert that Dowben had a personal interest and is biased, so his

testimony should be disregarded.  The Court overrules Defendants' objection.  Even if Dowben

is biased, that is a matter of credibility and weight of testimony, not of admissibility.

     **B.  The Special and Amended Special Motions to Strike**

       **1. Preliminary Matters**

     Before getting to the heart of the motion, we initially note two things.  First, while neither

party has raised the issue, this Court has the authority to rule on this motion.  The Fifth Circuit

has explained that "Louisiana law, including the nominally-procedural Article 971, governs" in

diversity cases.  *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 164 (5th Cir.

2009) (Citations omitted). *See also Brown v. Wimberly*, 477 Fed.Appx. 214, 216 (5th Cir. 2012)

("Under ... Article 971, the Anti–SLAPP statute, a defendant can file a special motion to strike

where the defendant has been sued for exercising his constitutional rights. This court has adopted

the use of the statute in federal court under *Erie*.").

Second, concerning timeliness, Article 971(C)(1) provides that the "special motion may be filed within ninety days of service of the petition, or in the court's discretion, at any later time upon terms the court deems proper." In *BCCL Enterprises, Inc. v. Rizzo*, 2013-1624 (La.App. 1 Cir. 8/20/14), 2014 WL 4102467, the Louisiana First Circuit found no abuse of discretion in allowing a motion to strike despite an almost three year delay. The *BCCL* court emphasized the plain language of the article; that is, Article 971(C)(1) uses the permissive word "may" and allowed a motion to be filed "in the court's discretion, at any later time" upon terms "the court deems proper."

Here, the Special Motion to Strike (R.Doc. 22) was filed roughly one year after suit was filed. Thus, under *BCCL*, the Court clearly has the discretion to entertain this motion. Further, because neither party has shown any undue prejudice from the filing of this motion, the Court chooses to exercise said discretion and entertain the motion.

### 2. The Statute, Its Construction, and Its Burden

La Code Civ. Proc. art. 971, entitled "Special motion to strike," provides in part:

A.(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim.

(2) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3) If the court determines that the plaintiff has established a probability of success on the claim, that determination shall be admissible in evidence at any later stage of the proceeding

...

F. As used in this Article, the following terms shall have the meanings ascribed to them below, unless the context clearly indicates otherwise:

(1) "Act in furtherance of a person's right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue" includes but is not limited to:

....

    (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Article 971 was enacted by Acts 1999, No. 734, § 1. Section 2 of the Act provided:

The legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances. The legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. *To this end, it is the intention of the legislature that the Article enacted pursuant to this Act shall be construed broadly.*

(Emphasis added). Further, the Fifth Circuit has explained the following about statutes like

Article 971:

A number of state legislatures have expressed concerns over the use (or abuse) of lawsuits that have the purpose or effect of chilling the exercise of First Amendment rights. These suits are commonly referred to as "strategic lawsuits against public participation," or "SLAPPs." In response to the growth of SLAPPs, some states have provided a procedural method—often called a "special motion to strike" but also known as an "anti-SLAPP motion" or "SLAPPback"—to weed out and dismiss meritless claims early in litigation. Dismissal of these frivolous tort claims saves defendants the cost and burden of trial and minimizes the chilling effect of these lawsuits. At the same time, meritorious claims proceed, vindicating the interests of those who actually suffered from defamation or other torts.

*Henry*, 566 F.3d at 169. Finally, the Fifth Circuit has articulated the following burden for Article

971.

Article 971 establishes a burden-shifting analysis for weeding out frivolous claims. To succeed on an Article 971 motion, the defendant must first make a prima facie showing that Article 971 covers the activity underlying the suit. That is, the defendant must "establish[ ] that a cause of action against him arises from an act by him in furtherance of the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue." *Starr v. Boudreaux*, 978 So.2d 384, 388–89 (La.App. 1st Cir.2007). If the defendant makes this showing, "the burden then shifts to the plaintiff to demonstrate a probability of success on his claim." *Id.* at 389.

*Henry*, 566 F.3d at 170. "If the plaintiff fails to demonstrate a probability of success, the trial court dismisses the claim. Otherwise, the trial court denies the motion and the suit proceeds as it normally would." *Id.*

### 3. First Issue - Defendant's Burden - First Amendment

The first issue is whether the Defendants established a prima facie showing that this cause of action "arises from an action ... in furtherance of the exercise of the exercise of [their] right of ... free speech." This phrase has four definitions under Article 971(F)(1)(d), but only one is potentially applicable here:

(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Thus, this issue turns on whether the Defendants were discussing a "public issue or an issue of public interest."

Defendants argue this is a public issue. Defendants assert that the conference call included representative of public universities, "one of which is an EFRC receiving EFRC funding from the US Department of Energy." (R.Doc. 22-7, p. 7). Defendants further say that the "EFRC data in question was developed through a collaborative, federally funded research project aimed at developing an alternative fuel source" and that, "the project, if successful, will

have a significant impact on global economies and development." (Id.). Further, Defendants claim that the alleged defamatory statements were made "during a discussion involving multiple representatives of public universities and related to research data developed through a federally funded project involving several public universities and a national laboratory regarding a research project of paramount interest to the public at large." (Id.).

Defendants rely primarily on one case, *Kirksey v. New Orleans Jazz & Heritage Foundation, Inc.*, 2012-1351 (La.App. 4 Cir. 2/27/13), 116 So,3d 664, 669, *writ denied* 2013-0686 (La. 5/3/13), 113 So.3d 216, in support of their public issue argument. In *Kirksey*, plaintiff alleged that the defendant defamed him by filing suit against him alleging that he misappropriated funds and that it published these statements to its board members and then the Times-Picayune. The Louisiana Fourth Circuit found that this was a matter of public concern, even though the suit was between two private parties, because "the Jazz Festival is one of the premier entertainment events each year in the City of New Orleans, contributing millions of dollars each year to the City's economy." *Id.* at 669. Defendants argue that, "Just as the Jazz Festival, as a premier event and vital part of the economy of New Orleans, is a matter of public concern, so too are the operations, research and funding of LSU/CAMD as an EFRC grant recipient and member of a collaborate project using federal tax dollars to develop a process that would have far-reaching effect on the U.S. and global economy." (R.Doc. 22-7, p. 8).

Plaintiff argues that this is not a matter of public issue. (R.Doc. 51, p. 26). He says this is an entirely public matter that does "not relate to any matter of political, social, or other concern to the community." (Id.). There was no police report here, as in *Kennedy v. Sheriff of East Baton Rouge*, 05–1418, p. 9 (La.7/10/06), 935 So.2d 669.

This case appears to be unique among those interpreting the "public issue."[2]  Further, *Kirsey* also does not seem analogous.  *Kirsey* emphasizes the fact that Jazz Festival is, in the present, a huge event for the city of New Orleans that generates millions of dollars in revenue.  Here, the Defendants' work *could be* worth millions to the public *in the future, if successful*.

Louisiana courts have interpreted the "public issue" and "public interest" requirement as being the same as the "public concern" issue in defamation cases.  *See Lyons v. Knicht*, 2010-1470 (La.App. 3 Cir. 5/11/11), 65 So.3d 257, 265.  In *Kennedy v. Sheriff of East Baton Rouge*, 05–1418, p. 9 (La.7/10/06), 935 So.2d 669, the Louisiana Supreme Court explained that matters are of public concern if they relate "to any matter of political, social, or other concern to the

_____

[2] News or police reports appear to be strongly associated with a finding of a "public issue." For instance, in *Henry*, the Fifth Circuit held that the public issue requirement was satisfied when the case involved a series of newspaper articles concerned with the loss of a government contract and the investigation of an entity doing business with the federal government and the State of Louisiana. *Henry,* 566 F.3d at 181.  Similarly, in *Armington v. Fink*, No. 09-6785, 2010 WL 743524 (E.D.La. Feb. 24, 2010), the Court found that the publication of an article about the difficult choices faced by a hospital after Hurricane Katrina as being a matter of public interest, even though the article was published four years after the storm. In *Kennedy*, the Louisiana Supreme Court found that a "report to law enforcement regarding the suspected distribution of counterfeit currency in the community" to be a matter of public concern because "it is an issue about which information is appropriate and needed, and in which the public, and particularly the business community, may reasonably be expected to have a legitimate interest." 935 So.2d at 677 n. 6. Finally, in *Williams v. Nexstar Broadcasting, Inc.*, 11-887 (La.App. 5 Cir. 4/10/12), 96 So.3d 1195, the Louisiana Fifth Circuit found that certain news reports were a matter of public concern when they related to an audit of the Louisiana Community Development Corporation (a nonprofit corporation that served as the lead entity for the federal Empowerment Zone and Enterprise Community process in north Louisiana) by the USDA.

Other suits have found no public interest, but they are also distinguishable from the suit at hand as well.  For instance, in *Lyons*, the Louisiana Third Circuit found no public interest in a dispute between an interior designer and a private corporation for failing to perform work or provide services in exchange for money received.  In *Savoie v. Page*, 2009-0415 (La.App. 3 11/4/09), 23 So.3d 1013, 1016-1017, the same court found that reports of threats of physical confrontation made only to individual members of and the board of a private hunting club was not a public issue.

community. Whether speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the entire record." *Id.* at 277 n. 6 (Citation omitted). Further, the United States Supreme Court has explained that "Speech involves matters of public concern "when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, – U.S. –, 134 S.Ct. 2369, 2380 (2014) (citing *Snyder v. Phelps*, 562 U.S. ----, ----, 131 S.Ct. 1207, 1216 (2011)).

The Court holds that the Defendants have satisfied their burden of proving this is a "public issue" or matter of "public concern." As the Defendants' counsel asserted at oral argument, the conference call at issue involved members of two different public universities and the alleged accusation of theft or destruction of data from a federally funded program. The project itself involved a collaboration of scientists across the nation and world. Thus, the content, form, and context of the statements demonstrate that they relate to a public issue. Finally, the legislative history of Article 971 requires that this Court give the statute a broad construction, thereby requiring its application in the event of a close call like this one.

### 4. Second Issue - Application of the Probability Standard

The issue of how to interpret or apply the probability standard is the central one in this case. The Defendant argues that the Motion to Strike differs from a Motion for Summary Judgment in that 1) the former "places on the plaintiff the more difficult burden of proving a probability of success on the merits, which 'has been described as a difficult burden, justified by the importance of protecting free speech", and 2) "the presence of an issue of fact will not defeat a Special Motion to Strike." (R.Doc. 31 at p. 2).

Defendant asserts that the court must evaluate the "quantity and quality" of evidence. Concerning quantity, there were seven people on the phone call when the alleged defamatory remarks were made. Only one claims the defamatory remarks were made. Four individuals from LSU (including two non-parties) maintain no such remarks were made. The Defendants believe that, because the two remaining participants, who were affiliated with UNL, have remained silent, there should be a presumption that their testimony would be unfavorable to Lozovyy. Thus, according to Defendants, there is a six to one advantage. The Court finds no such presumption here, but, putting that aside, there is at least a four to one advantage here.

Concerning quality, Defendant maintains that its considerable evidence attacking the credibility of Dowben and his relationship to the plaintiff Lozovyy is significant. Further, Defendants claim that a single affidavit is not enough to defeat a Special Motion to Strike. Defendants cite to several Louisiana cases where the plaintiff's evidence was insufficient to defeat a motion to strike. *See Thomas v. City of Monroe Louisiana*, 36,526 (La.App. 2 Cir. 12/18/02), 833 So.2d 1282, 1289 (plaintiffs lost a special motion to strike despite submitting multiple affidavits, including the plaintiff's own "self-serving affidavit."); *Hunt v. Town of New Llano*, 2005-1434 (La.App. 3 Cir. 5/3/06), 930 So.2d 251, 255 (the appellate court rejected Plaintiff's affidavit, which "merely alleges that the Town's suit against her contained statements which were 'false and not true,'" and found that these "uncorroborated conclusions" did not suffice to meet the burden of establishing a probability of success on her defamation claim.) *Estiverne v. Times-Picayune, L.L.C.*, 2006-0571 (La.App. 4 Cir. 12/20/06), 950 So.2d 858, 860, (The Court pointed out the Defendant "was [not] able to present any evidence that would form a *prima facie* case for the allegations asserted in his petition other than his own deposition

testimony."); *Melius v. Keiffer*, 2007-0189 (La.App. 4 Cir. 3/12/08), 980 So.2d 167, 172-173

("The affidavits [of the plaintiff and his wife] use their personal beliefs and feelings to support

their assertions that [the defendants] spoke in alleged bad faith.  No additional evidence

supporting Mr. Melius' claim was presented.  These uncorroborated assertions are inadequate to

support a claim of defamatory words or damages from the alleged defamation."); *Brander v.

Molonguet*, 2014-0712 (La.App. 1 Cir. 12/23/14), 2014 WL 7332206, (where the appellate court

considered conflicting affidavits and concluded that the plaintiff did not establish his probability

of success).

Plaintiff, on the other hand, relies on *Louisiana Crisis Assistance Center v. Marzano-

Lesnevich*, 827 F.Supp.2d 668, 677-679 (E.D.La. 2011),*vacated on other grounds*, 878

F.Supp.2d 662 (E.D.La. 2012), where the court held that there was no conflict between Article

971 and the Federal Rules of Civil Procedure in part because the burden under Article 971 is

functionally equivalent to the burden imposed on a nonmovant in a motion for summary

judgment.  Interestingly, the court relied on some of the same cases cited by Defendants in

support of their argument.[3]

This issue of how Article 971 is applied is so critical to this case because it is outcome

determinative.  That is, if Article 971 applies a summary judgment standard, then Plaintiff has

---

[3]*See, e.g., Louisiana Crisis Assistance Center*, 827 F.Supp.2d at 678 ("In *Estiverne* ..., for
example, in describing a plaintiff's burden to demonstrate 'a probability of success' under article
971, the Louisiana Fourth Circuit Court of Appeal quoted a Louisiana Supreme Court decision
setting forth a defamation plaintiff's burden to overcome a motion for summary judgment,
implicitly holding that the burdens were the same. 2006–0571, p. 4 (La.App. 4 Cir.2006), 950
So.2d 858, 860. Because the plaintiff had failed to carry the summary judgment burden of
producing 'evidence of sufficient quality and quantity to demonstrate that he will be able to meet
his burden of proof at trial,' the court held that he had not demonstrated a probability of success
on the merits of his claim as required under article 971.")

submitted enough evidence to survive.  If, however, a higher "probability" standard is applied that requires a consideration of the "quantity and quality" of the evidence, then Defendants prevail.

While Louisiana appellate court and Eastern District decisions may be persuasive, this Court is bound to follow the Fifth Circuit.  There are three Fifth Circuit cases interpreting Article 971.  - *Henry*, *Brown v. Wimberly*, 477 Fed.Appx. 214 (5th Cir. 2012), and *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742 (5th Cir. 2014).  Unfortunately, these cases conflict with one another - and sometime within the same opinion - as to the proper standard.

When discussing the separability requirement of the collateral order doctrine, the *Henry* Court explained, "Indeed, the Article 971 determination is an assessment of the merits of a plaintiff's claim, [which] suggest[s] that such an inquiry might weigh against a finding of separability." *Henry*, 566 F.3d at 175 (Citation omitted).  But the *Henry* court went on to explain:

> These potential entanglements, however, are insufficient to forestall a finding of separability.  First, Article 971 has a purpose distinct from that of the underlying suit.  *As the Ninth Circuit reasoned in addressing the appealability of a similar California statute, an anti-SLAPP motion "resolves a question separate from the merits in that it merely finds that such merits may exist, without evaluating whether the plaintiff's claim will succeed." (Citations omitted).  Moreover, "the purpose of an anti-SLAPP motion is to determine whether the defendant is being forced to defend against a meritless claim," not to determine whether the defendant actually committed the relevant tort. (Citation omitted).*  Article 971 thus "exists separately from the merits of the defamation claim itself." (Citations omitted).

*Id.* (Italics added).  The court continued:

> But a decision on an Article 971 motion is not a ruling on the ultimate merits; it is merely tangential to the merits.  A court deciding an Article 971 motion does not ask whether the plaintiff has proved her claim, but whether she has shown a sufficient probability of being able to prove her claim.  *This is akin to a court*

*determining only that a plaintiff has presented a threshold showing that allows her claim to proceed.*

*Id.* at 176 (Italics added). Then, when discussing the merits of the Article 971 motion, the Fifth

Circuit has explained:

> After the defendant has met its prima facie showing, the plaintiff must demonstrate a probability of success on his or her own claim. A plaintiff contesting an Article 971 motion must show a probability that she will be able to establish all of the elements of her tort claim. ...
>
> "To establish a probability of prevailing on his claim, a plaintiff must state and substantiate a legally sufficient claim. *This is done through a prima facie showing of facts sufficient to sustain a favorable judgment*. This requires more than that which is necessary to survive a normal motion to dismiss, as *a defamation plaintiff must produce evidence of sufficient quality and quantity to demonstrate that he will be able to meet his burden of proof at trial*. As one Louisiana court has noted, establishing a probability of success is a *difficult burden*. This burden is justified, however, as the necessity of protecting our constitutional rights of free speech and petition, particularly when exercised in relation to public issues or matters of public interest, requires the imposition of this burden on a plaintiff who brings a defamation action impacting these rights."

*Henry*, 566 F.3d at 181-182 (Citations and internal quotations omitted) (Italics added).

Thus, *Henry* can be read to support either party's position. On the one hand, *Henry* talks

about a "difficult" and "high" burden on the plaintiff, even for a negligence-based defamation

action. Further, *Henry* requires the plaintiff to provide "evidence of sufficient quality and

quantity to demonstrate that he will be able to meet his burden of proof at trial." This echoes

what Defendants asserted.

On the other hand, *Henry* says that the probability standard just requires a "*prima facie*

*showing of facts sufficient to sustain a favorable judgment.*" A prima facie case is defined by

*Black's Law Dictionary* (9th ed.) as "a party's production of enough evidence to allow the fact-

trier to infer the fact at issue and rule in the party's favor." This would seem to support a

summary judgment standard - that is, just enough evidence for a reasonable jury to side with the plaintiff.  Further, in the separability discussion, the Fifth Circuit makes clear that it is not determining "whether the defendant actually committed the relevant tort" but rather only whether "a plaintiff has presented a threshold showing that allows her claim to proceed." *Id.* at 176.  Thus, while *Henry* appears to lean toward the summary judgment standard, nothing is definitive.

*Brown* is also ambiguous.  In *Brown*, the Fifth Circuit said:

> *To pass both the heightened requirements of the Anti-SLAPP statute*, and the pleading requirements for defamation in the litigation context, [plaintiff] must plead facts that show that the alleged defamatory statements were made with malice or intent to harm, and *that he has a greater probability of showing this at trial than not*.

477 Fed.Appx. at 216 (Italics added).  However, the Court made this statement in the context of defamation claim made in a legal malpractice suit, which appears to have a special burden.[4]  Thus, while the italicized language seems to point toward a heightened burden, the case is unique factually.

Finally, in *NCDR*, the Fifth Circuit interpreted Texas's anti-SLAPP statute and held that, the district court's denial of a motion to dismiss under that law was immediately reviewable under the collateral order doctrine.  The Court then affirmed the denial of the motion to dismiss.

To determine if the collateral order doctrine applied, the Court examined *Henry* and Article 971 though applied its own analysis of the Texas statute. In discussing the separability requirement,  the Fifth Circuit compared Texas's statute to Louisiana's and said:

---

[4]The Fifth Circuit has explained that, to prove a defamation claim related to a legal malpractice suit, a plaintiff must prove "specific malice or an intent to harm on the part of the attorney in persuading his client to initiate and continue the suit." *Brown*, 477 Fed.Appx. at 216.

Separability under the TCPA [the Texas anti-SLAPP statute] is even clearer than separability under the Louisiana statute *because Louisiana's statute relies in part on an analysis of the merits of the underlying claim. Louisiana's statute specifies that if the defendant meets his burden under the statute to show that the plaintiff's suit is in connection with the defendant's right to free speech, the suit is dismissed unless the plaintiff can establish "a probability of success on the claim." Henry*, 566 F.3d at 170 (citing La.Code Civ. Proc. Ann. art. 971(A)(3)). *By contrast, the TCPA does not require so searching a review into the plaintiff's probability of success. Instead, a plaintiff can defeat an anti-SLAPP motion if he merely establishes a prima facie case for each element of the claim.* Tex. Civ. Prac. & Rem.Code Ann. § 27.005(c). *Thus, the TCPA "has a purpose distinct from that of the underlying suit." See Henry,* 566 F.3d at 175. More directly, "an anti-SLAPP motion 'resolves a question separate from the merits in that it merely finds that such merits may exist, without evaluating whether the plaintiff's claim will succeed.' " Id. (quoting Batzel, 333 F.3d at 1025). As explained in *Henry*, " '[t]he purpose of an anti-SLAPP motion is to determine whether the defendant is being forced to defend against a meritless claim,' not to determine whether the defendant actually committed the relevant tort." Id. (quoting *Batzel*, 333 F.3d at 1025). In sum, the denial of a motion to dismiss brought pursuant to the TCPA resolves an important issue separate from the merits of the case, satisfying the collateral order doctrine's separability requirement.

745 F.3d at 749 (Italics added). Thus, under the Texas statute, the plaintiff need only satisfy a prima facie burden. And under the italicized language above, and *directly contrary to what* Henry *said*, Louisiana's anti-SLAPP statute does *not* require a finding of a prima facie case but rather appears to require something more. Thus, *NCDR* implies that Article 971's probability standard is higher, even though it does so in dicta.

Faced with these seemingly contradictory rulings, this Court finds that the burden imposed by Article 971 is greater than a mere finding of a prima facie case or merely the burden of the nonmovant on a motion for summary judgment. As counsel for Defendant keenly observed during oral argument, there must be a distinct purpose for an Article 971 Motion to Strike; otherwise there would be no point in enacting the statute because the Legislature could have merely relied on the summary judgment article itself. Further, this conclusion is supported

by Article 971(A)(2), which provides that, "In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Thus, the Louisiana Legislature did appear to want some weighing of the evidence.

However, *Henry* also makes clear that an Article 971 determination is not a full trial on the merits; the issue is not "whether the defendant actually committed the relevant tort."

Given the evidence before the Court, Plaintiff could only prevail if the Article 971 standard were that of a motion for summary judgment. While the Fifth Circuit has sent conflicting signals as to the exact standard this Court is to use, the Court need not delineate the precise contours of this ambiguous statute. For now, the Court will only find that, in the context of this case, the Plaintiff has failed to satisfy his burden of proving a probability of success on the merits. In terms of quantity of evidence, there are four affidavits supporting Defendants' version of what happened on the phone call and only one declaration supporting Plaintiff's version. In terms of quality of evidence, Defendants have submitted considerable evidence casting doubt on the credibility of the Plaintiff's sole witness, Mr. Dowben. If any weighing of evidence is required by Article 971, and the Fifth Circuit appears to require this, then Plaintiff loses because he has failed to prove with sufficient probability that defamatory statements were ever made.[5]

---

[5]The Court does note, however, that if the ordinary summary judgment standard applied, then the Plaintiff would have satisfied his burden. Peter Dowben's declaration would be enough, by itself, to defeat a motion for summary judgment and create an issue of fact for trial.

**III. Conclusion**

Accordingly,

**IT IS ORDERED** that the Motion to Strike Evidence (R.Doc. 32) is **DENIED**, and

**IT IS FURTHER ORDERED** that the Special Motion to Strike (R.Doc. 22) and the Amended Special Motion to Strike And, Alternatively, Rule 56 Motion for Summary Judgment (R.Doc. 25), are **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on <u>January 26, 2015</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**